Case No. 21-5080, Association of American Physicians and Surgeons, Inc., and Katerina Varelli, individually and on behalf of all others similarly situated, appellants, v. Adam Schiff, in his individual capacity and his official capacity as a member of Congress for the 28th Congressional District of California. Mr. Joseph for the appellants, Mr. Tittleman for the appellants. Council for appellants, please proceed. Lawrence Joseph, the appellants may please the court. May I ask you to raise the DS so that your voice can be heard? Yes. I had to figure out that. The courtroom deputy is supposed to explain that. It is as high as it can go. It's as high as it can go, Your Honor. Okay. I'll lean forward, perhaps.  My conference with the opposing counsel was that there was a decision yesterday, a 70-page decision. It appears involving presidential records and committee of Congress. You mean the decision by this court? Yes, correct. And I have not – I've read the first page or two on my phone coming in this morning. It seems that it's not relevant. So if anyone on the court believes it is, I'd request a chance to review that before responding. But that involved a committee of Congress tasked with investigating and reporting. This involves an individual member, so I don't think it's relevant. I just wanted to say that I have not had a chance to read that. I haven't either. Does it even relate to speech and debate or a standing? Well, it relates in part, I suppose, to the power of a committee of Congress and the implied investigative powers. I honestly don't know, Your Honor, if there's anything in there that's relevant. I don't think so. Okay, great. Wonderful. What this case does relate to, and it was dismissed on immunity and Article III standing grounds, is the extent to which an individual member of Congress outside the committee structure can interfere with rights of private parties interacting with third parties. The three sort of important things at issue here are standing, immunity, which has two components, the speech or debate clause, and also the Federal Courts Claims Act. And then the third important issue is the power that the district court for this district was given in 1801, drawing on the common law of England, or Maryland, I should say, as it existed, which was then pretty much close to the common law of England. And that continued going forward. Counsel, I advise you to start with the standing issue and the speech and debate, because those are the most important questions. Please. They are, but I believe the third also relates to standing, relates to immunity, because shortly before the founding of this nation and therefore before Maryland came into existence and this common law power was given to the district court here in 1801, a colonial governor of the crown was held liable for a tort, malicious prosecution, assault, false imprisonment. And that was done through the common law court, the highest common law court in England, the King's Bench. And that same power was given to the Maryland state court system, which was given to the D.C. court system. Mr. Joseph, can you cite any case since 1970's Reorganization Act in which the district court has used this historical common law power? Well. So that's almost 50 years, more than 50 years. The Gaiman, again, Heckler versus Gaiman, Gaiman refers to mandamus, and it cites this particular common law. So all district courts have mandamus. Oh, no, the Gaiman court distinguishes the 1361 mandamus, the Venue of Mandamus Act from, if you go back and look at Gaiman and we cite this. Is your serious argument that Article III is not the limitation on a federal district court in this circuit? The district court has the power to create a tort against an officer of the national government. That may or may not be true. But are you suggesting that the district court is like the Supreme Court of Massachusetts? It's not bound by Article III? It has the power to create torts. It's, of course, bound by Article III standing, yes. Yes. So why don't we go to the standing and speech and debate? Because we don't have to even, if you lose on those, we don't even have to get to it. Well, they do animate the standing inquiry for several reasons. One is if a tort were created for just this kind of interference, certainly there are concrete things, information, revenue. You still have to have injury in fact. Counsel, that's the third time you've been asked to address standing. Why don't you? Thank you, Your Honor. So the concrete injuries here are loss of revenue, loss of information, inability to associate, reputational injury, contracts that were modified. Those are all concrete. Loss of what? Loss of? Loss of income? Yes, we've mentioned that, yes. How much? That was not quantified. No, so we have no idea whether that's a penny or more. What's your second loss? Well, we're being branded as anti-vax in this instance. Who's branding you? Both the defendant and I suppose also the third-party tech companies. Where did he brand you as such? In his inquiries to the tech companies and in the background negotiations that happened before those were released. His inquiries to the tech companies do not even mention you or your organization. That's correct. So that doesn't work for you. And what's the background? No, I mean, counsel, let's be clear. What's the background discussion by the chairman? I'm sorry, could you repeat that? I didn't hear you. What is the background discussion by the chairman on which you are relying to show you have been branded as anti-fax? The interaction between the congressman's office and the companies with which he was. What specifically, counsel? I didn't see anything in your brief. He's inquiring of these companies. He doesn't mention you or your operation or anything. The allegation in the complaint is that they worked behind the scenes to develop a position, and then they issued this press release announcing that the. That's going to causation. Let's assume arguendo for purpose, just for purposes of discussion. Did you have injury? In fact, if your voice is muted, if your ability to speak is somewhat diminished, that could be injury. In fact, what I don't see for the life of me, how you get causation. Well, again, we would be willing to bring in the third party companies as well. No, no, no, no, no, no, no. Your case is before us now. What is your theory of causation? That this was the intended result of what was the elimination that the the the platforming of. So there are these search engines that used to develop a reliable stream of traffic to our sites. Google is one of the bigger ones. Duck Duck Go, I think, is one of the smaller ones being. So. So the social media got you down, right? That's right. But what's the causation? The causation is that may be the injury. In fact, where's your causation? The negotiation between the congressman's office and the tech companies. The congressman never even mentioned the tech. He did communicate with the tech. I never mentioned you. Yeah, well, we are. So we're not we're not alleging, I guess, defamation in that. No, no, there's no connecting link. Well, the connecting link is down. We have what the complaint alleges is good information presenting all sides of the debate on vaccines. Anything that questions the dominant narrative from Representative Schiff is considered anti-vax information. You can't you can't you can't listen to that. So we are. Third party who arguably caused you injury. But there is no connection to the defendant. The defendant sent his letters. We say they negotiated beforehand before they were released. And then immediately thereafter, we had a plummet. I think we think that there's enough there for for article freestanding and causation. And and how about addressability? Well, addressability, if there's there's two things, I suppose. One, we could get damages. That's a possibility. It gets to the immunity question, which we haven't discussed yet. To what? Particularly, particularly. Abusive process interference with, I mean, interference with what? With First Amendment rights. So I'm trying to retrace my thoughts. So in other words, any time a member of Congress writes a private entity. About a particular subject. Of interest to your association. That's enough for article freestanding. Well, this was a little bit of an extreme example that I mean, the answer to your question may be yes or no, but. But here what we have is very targeted to the platform. So it's not just writing a letter. The goal is to sort of shut down information. Of a disfavored variety. And yes, the fact that he's a federal actor makes that problematic words. If they were just private actors conspiring, that would be a different thing. So you would just cut back on Congress's. Ability to inquire and feature debate yet. But you're just saying he's just a single congressman, although you sued him as chairman, right? No. You sued him individually. Yes. Damages against him individually. Let me clarify. We sued him. We didn't sue him in his. Capacity as chairman of the intelligence committee, we sued him as in his official and individual capacity. His official is as a member of Congress. But, you know, if you want to infer. You're going after him as an individual as well. We named him individually as well. And for abuse of process, if indeed, that's what he did. If what he I mean, again, he is not Congress. He's referred to several times runner as Congress. He is one member of one body of the house. I'm sorry. One member of one body of Congress, the house. He, he is not. He does have an interest, I suppose, as indicated by prior years in which he got issued sort of an identical. Back to judge Silverman's question. Redress ability. So damages or an injunction that would take away again, he's publishing on social media, which under Proxmire and maturely, he's outside of the realm of Congress. If we get. Let me stop you for a moment on that. You do mention. Letters he sent from Congress. Well, that has nothing to do with your problem and of your case. You're grabbing another case. I gather is that the defendant by sending letters to social media implicitly threatened. Isn't that correct? In truth, I suppose we don't know if they were willing co conspires or whether he coerced them in a threatening way and made them do it. I thought that I understood your complaint was that there was a threat. And we allege that he coerced them into this. Yes. So the outside communication has nothing to do with your case. The publication on social media by the congressman. So I'm sorry. Social media comes into play here in two ways. No, no. I know how social media comes into play. That's your third party. But you're absolutely right about the Proxmire case, indicating that communications outside Congress are not covered by speech and debate. And you do have communications, but they're not relevant to your suit, which is the threat. Well, that's. But he also goes on social media and and brags about this. So this is this is essentially posturing. I mean, again, bragging about it is not part of your loss and not part of your injury. Your injury is that you were kicked off the social media. And branded, I mean, to the extent that reputational injury is part of it, the broad brush of calling because of being kicked off social media, you're hurt. OK, that's your injury. There is a reputational injury, but, yes, that's that's the primary one. OK, so. So all I'm trying to say is the outside communication is not really relevant to the key of your lawsuit, which is the threat. The alleged threat that his communication with social media creates. Well, I would disagree because if a body of Congress wants to enact a law about something sort of behavior being inappropriate, they can do that and has to get signed by the president or overridden. But this is just one member of Congress saying bad things about something and then going online in his social media accounts. Afterwards, and saying bad things about a particular line of thought and that line of thought then being beaten down, suppressed from from the public. Your case, a defamation case. No, there's defamation injury and we wanted to be. I didn't see that in your complaint. There's a reputational injury that's cited in the complaint. If you want a reputational injury because of being kicked off the social media. I'm sorry, it's because being called anti-vax. The complaint says that means unintelligent or uneducated. And what it really means is someone that disagrees with the representatives on whatever he thinks is right about the facts of your case were as follows. You put things on social media. And your statements are we have questions about these vaccines. But on the one hand, there's this view. On the other hand, there's that view. And so in your opinion, you're not pro-vax or anti-vax. All right. So the fact that the congressman writes letters saying to the tech companies, I'm concerned about misinformation. Appearing. It doesn't have anything to do with you. But it resulted in my hypothetical. I'm sorry. So now you say, well, if we say to the congressman. You're liable in damages. And suppose. He pays the money. How does that stop Google? Everybody else where you made money before. From keeping you off. Well, that is a form of redress. If the question is Article 3 standing. You you base your injury on what happened as a result of these letters where the letters said nothing about you in terms of your association. Right. All right. So all I'm getting at is. What how is your injury redress? By making a member of Congress pay damages. Because the people are the entities you want to carry your message have decided they're not going to carry it anymore. For whatever reason, they had a change in the board of directors. They had a change in policy. They're just not going to carry your messages anymore. The other. This goes back to Judge Silverman's question about redress ability. I was I said there were two mentioned damages. We went off on the recent discussion. The other is that we could get his his statements outside of Congress. So his social media statements taken down. That's a form of equitable relief. Doesn't even implicate the Federal Towards Claims Act. And that would leave us free as far as standing first party injury are concerned. That would leave us free to negotiate with the Googles of the world. You may express. Let me understand. What would the court order say about his outside statements? You said the four corners. No, the court said. Judge Rogers asked what did the court below say about that? The court below, I don't believe addressed. I may be wrong here. I don't just don't recall how the court addressed the idea that there is a first party injury by virtue of interacting with the vendor. The relationship and just take the redress ability would exist under. I think the question is, what would our court order say? Oh, well, it would say take. OK, so it would say that this is improper meddling. Representative meddling. What is asking questions of tech companies? Well, you're taking the surface of what's available. So it's not a letter that says take down this website. All right. It says I'm concerned about misinformation being sent out. And the tech companies said, we're not doing that. You know, discussion or the tech company could say we're not going to carry certain websites in the future. And what does our order say? To be sure that your website is not taken down. Well, the availability of declaratory relief for injunctive relief about the inappropriateness of to the extent that that we can prove that the representative shift worked behind the scenes. And this wasn't really honest fact finding, which is what we allege. We allege it was Kabuki theater. He arranged the result with them, then sent a letter and then, hey, presto, they did a press release. And then he complained. You are saying to the court, you can prove this. And you've made allegations. But now on the motion to dismiss. What did you say? In response. I don't believe that this issue came up particularly. It was I think we were given short shrift. And I think the court is supposed to assume the truth of our allegations. And didn't on this in this respect. But again, so if we remove the thumb on the scale that we say representative shift is trying to put, then we'd be free to win or lose. And that's FEC versus Aikens in our negotiations without the impermissible federal interference. I mean, members of Congress frequently make speeches or send letters on all number of topics, which may affect private behavior, which then may have an effect on a third party organization. Are you aware of any case in which a court has found that to be an injury for the party where a member of Congress's actions have created an arguably created an impact that had an effect on a third party? I mean, because this is happening every day, right? Where members of Congress are speaking out on various? Well, it shouldn't be in this in this sense. This is someone basically as a lone wolf. Counsel, isn't your answer your best answer to the Proxmire case? Well, there's the Proxmire case. There's also Block versus Meese, which was the Department of Justice. But it wasn't a member of Congress, but they were labeling someone as propaganda. Here we're being labeled as anti-vax and idiots and anti-science, which is odd because these my clients are the scientists, not the representative. And so. Again, I understand that, and I understand the political harm that that you are alleging, but. But in what way is it an Article three type of injury? In the same way in Block versus Meese, I mean, in other words, if you're in Block versus Meese, the label was propaganda. And if you were associated with the propaganda, you're a bad person. And the court, this court, distinguished between legal causation and de facto causation. Legal causation whether went to whether you could prove damages or not. All you needed for first standing was de facto causation, which is if people incorrectly believe that you're, you know, the DOJ tried to argue with propaganda doesn't mean what they're saying it means. But people are taking it that way. And here it's even worse because there, they were still able to reach their customers. It was the 80s. Now, we don't even, they have severed the connection between us and our, the people with whom we were communicating. So we don't even get to the question of whether the consumer thinks the anti-vax label is improper and therefore they should dissociate with us. That was the issue in Block versus Meese in the 80s. I'm still trying to figure out why the community, I grant you under Proxmire, the Supreme Court said communications directed outside of Congress may not be covered by speech and debate. But I still don't see why that is relevant to your basic gravamen in your case, which is an implicit threat that Congress makes and thereby the social media kick you off. So the communication outside doesn't seem to have particular relevance. You're upset about being kicked off. Well, I mean, to some extent, your question recalls Franklin versus Massachusetts. I might have the order wrong. But the idea there was how is this? I can't order the president to do something. But just a court ruling saying what the law is would be meaningful. In other words, saying you can't do this under the First Amendment. That would stop. I was just dealing with your communication outside. Right. And if that's impermissible, we can strike it. But it doesn't seem particularly relevant to your case. Well, you're not making a defamation argument, as was true in Proxmire. Right. That's true. We're not making a defamation argument. Your basic argument, I understand it, is there was an implicit threat when the congressman sent a letter out and the third party reacted to that implicit threat. That's your allegation. That is one half of it. You're putting together to suppress speech. Come on. That's the legal conclusion. I'm talking about the facts of your allegation. I understand your allegation. All I'm trying to say, it doesn't seem to have anything to do with public statements. It has to do with pressure on the social media companies. That is a component. And then he's gloating about it afterwards. Whether he's gloating or not, that's not relevant. Your only concern is that he allegedly knocked you off social media. Okay. But the question is, to the extent to which judicial power can touch what he's doing, either before or after, under the... Well, there's several problems. The first of which, there is no direct threat against you. Not at all. You're not even mentioned. So, causation seems to be very weak. Very weak. There's nothing you allege that leads us to conclude that your allegation is that there was a threat and therefore they folded. You didn't say that. In the First Amendment context that we're in, overbreadth is another concern. In other words, if someone's shooting out... I mean, normally if they were saying that you were doing something improper or whatever that would... I won't come up with a colorful example. But that might be defamation. But if what you're doing is saying a whole group of thought is improper for public discourse and shouldn't be online, that is causation. I don't have any further questions. Okay. Why don't we hear from Council for Appellate. Good morning, Your Honors. Todd Tatelman for Congressman Schiff. I'm the Principal Deputy General Counsel for the House of Representatives. I want to start, I think, where all three of you already are, Your Honors, which is there's an 800-pound gorilla in the room here. There is an absence of standing here because whatever injuries these plaintiffs may have suffered, and I'm not going to concede that they've suffered any legal injuries... The megaphone from somebody speaking in Lincoln Park. If there were an actual diminution, Judge Silberman, I think you'd be right, but there isn't one here. They haven't alleged one here. They haven't alleged their voice has been muted? They've alleged that their social... that their Internet presence has been diminished, but they're still able to publish... That's an injury in fact, seems to me. Although the District Judge didn't think so, but I have more problems with causation and redressability. I was just about to get there, Your Honor, which is to say even if you assume that there is an injury in fact, the problem here is that Mr. Schiff, the Congressman, is the wrong party to be the defendant. The proper parties here are the tech companies, the social media companies. Suppose... suppose the letter that Congressman Schiff sent to the social media companies said, I want the defendant off social media, and if you don't accommodate my views, God help you on Section 230. If that were what a hypothetical letter says, and it's certainly not what the letters Congressman Schiff sent in this case said, but if that were a hypothetical letter sent, then I think we would need to... I would need to shift my focus and talk to you about the fact that he would still be immune under the Speech or Debate Clause because that official letter would implicate other... But right now we're only talking about standing, and under the standing doctrine, as this case has been presented, first of all, there was no... Well, there would be causation under that hypothetical, would there not? I would certainly challenge that there would be causation, yes. Why? Why wouldn't you concede there was causation? I wouldn't concede it, Your Honor. I would suggest that there was still an absence of causation because the tech companies still needed to effectuate that. His injuries, his clients' injuries are caused by the tech companies. Their actions are the cause of the injuries, not the letters. In other words, the Congressman could, with impunity, threaten the tech companies. I wouldn't say with impunity, Your Honor. He could certainly make his public policy position well known. He could certainly advocate for a position that says, because you tech companies have failed to do things that I find or other members like me find unacceptable, we are going to consider legislation that would remedy that. He may do those things. The question is whether that might still be covered by Speech or Debate, but wouldn't causation be established? Again, under your hypothetical, Your Honor, I think that you're assuming that the link follows, that because he makes the threat, the tech companies do what he wants them to do, or they refuse to do it, and Congress passes a change in the law. Either way, I think their causation link is problematic because the independent actor of the tech company still gets to make a decision. Facebook could decide, we're perfectly comfortable leaving these people on our platform, and we're perfectly comfortable with whatever Congress comes up with. Normally, we conclude if somebody puts a gun to the hand of a third party and says, don't do something, causation is established. Under certain circumstances, I would agree with that, Your Honor, but here I don't know that that necessarily follows because these tech companies are motivated by a tremendous number of factors, none of which can be established. Your hypothetical doesn't necessarily establish that it would be Congressman Schiff's letter or his threat, express or implicit, that would lead them to take the actions that caused the injury. It might, and if it could be established that it did, I would concede that causation was there, but simply on its face, I don't know that that's sufficient, and I would certainly suggest that it isn't. And would such a letter be covered by the Speech and Debate community? I would want to probe more details into what exactly the letter says, but hypothetically, a letter that suggests that unless a private company does certain things that Congress finds acceptable, Congress is going to consider changes in the law and lays out what those potential changes would be. I would think we could make a very good argument that such a letter could be covered under the Speech and Debate class. There's a line there, and it could cross it. Congress has the authority to direct private companies to take action? Not direct. A single member has the ability to do that? No, Your Honor, a single member doesn't have the ability to do it, but the single… So you're saying that would be a legislative activity? Telling a private company what to do would be a legislative activity within the scope of the Speech and Debate class? I'm suggesting that it could be a legislative activity depending on how it was phrased, depending on the rest of the context. Are you directing private companies what to do as a legislative activity? I don't think it would be directing them, Your Honor. As I understood Judge Silverman's hypothetical, it was a suggestion. It was using the political tools and the leverage that they have to change the law to effectuate a result. Again, I think there is a line there, and this is why I hedged at the beginning, which is there is a line, and I'm willing to concede that. But I don't know that merely suggesting that a member could suggest to a group of companies like this, that unless you all companies make significant changes to your operations or your behaviors, that Congress is going to consider legislation to make them for you. I do think that potentially would be protected under the Speech and Debate class. How you communicate that, the language that gets used, all of those things would come into play in that analysis. But as a hypothetical matter, yes, I think that potentially could be covered. Could there be constitutional problems that would circumvent the Speech and Debate clause? Are you familiar with the Pillsbury case in the Fifth Circuit? From the Fifth Circuit, Your Honor, yes, where the members in that case interfered with the decision makers at the regulatory agency. Right. And that was a violation of the Constitution? That was found to have been a violation of due process for that company. Yes, yes, yes. I'm glad you are familiar with the case. But would not any threat a congressman issued against speech raise First Amendment questions, just like due process questions? Yes, it would raise those questions, Your Honor. But the Supreme Court's jurisprudence and this court's jurisprudence, and I would point you to the most recent example being the case Rangel v. Boehner, has said very clearly that the mere allegation that something violates a constitutional right or even a rule of the House isn't enough to get around the speech or debate immunity. So, yes, it would raise the questions, but I still think the immunity could hold. Well, under any circumstances, no matter how significant the threat was to stop speaking? Again, I want to be careful, very careful here, because I don't want to suggest that there are absolutely no circumstances upon which, but I think you have to get very, very far down the line here. And I'm not sure that the hypothetical circumstances that we're talking about get that far down the line. Hypothetically, they could. I think we could come up with potential examples between us that might reach that. This case certainly doesn't come anywhere close to it. And if there are examples several steps removed from where we are here, this case isn't that case. Can I just ask you to clarify something on the sovereign immunity point? Is it the position, is your position that this is only sovereign immunity that is covered by the Westfall Act? Or are you suggesting there is some broader sovereign immunity that is not statutory? I just want to be clear about that. We've been very, we think we've been very clear in our papers that it is the first one, the Westfall Act. It's the sovereign immunity that has been extended by Congress through the Westfall Act and the amendments to the FTCA in 1988. So you're not claiming any non-statutory sovereign immunity? No. No, Your Honor. Not here. I'm happy to answer any other questions. Judge Rogers, if you had any or anyone else. If not, I think it's very clear the district court's opinion was correct. It should be upheld. The lack of standing in the application of the speech or debate clause to this particular case are more than sufficient to uphold the motion to dismiss. Judge Contreras' opinion is correct as a matter of law, and this court should uphold it. Thank you, counsel. All right. Counsel for appellants? I regret that we didn't talk about immunity before because I think it's a little unfair to my colleague to have me say what I'm going to say now, which is all in our briefs. There is no speech or debate. You had previously talked about what? Immunity. When I was at the podium, we talked about standing. So what is your argument? Essentially, the Westfall Act provides no immunity. It's more of a double negative. What the FTCA does is it waives sovereign immunity for damages. It has nothing to do with injunctive relief. It waives sovereign immunity for damages, but under Passman v. Davis, there is no sovereign immunity or rather there's no common law sovereign immunity for members of Congress outside of the speech or debate clause. So if we're right that this is not within the speech or debate clause, he has no immunity whatsoever. What the Westfall Act does is it says... I think our questions have tried to make you focus on the allegations in your complaint and what your claimed causation is and how we could redress that. So if we're right about immunity, which I didn't discuss before because you didn't ask me about it. If we're right about immunity, then we could perhaps amend the complaint to address standing. I mean, you can always refile too, but that's not the case that's before us. And suggesting that on reply seems somewhat inappropriate, counsel. Too late. Well, we have argued throughout in their complaint that if you don't, if you think we've addressed redressability problem, we can name the third party companies. Of course you can. We've done that in the beginning and the district court and you discussed that. So what else do you have to respond? Okay, so there's some FTCA argument before the court. There's some FTCA case law from before 2016 that suggests that there is immunity here. But the Simmons case basically acknowledges that that statute, all the exceptions to the FTCA are prefaced by this chapter does not apply to the following exceptions. So if you're in one of those exceptions and the parties here agree that we are the discretionary function one here. If you were in one of those exceptions, the entire FTCA, including the Westfall Act, doesn't apply. So the Westfall Act does nothing. Passman v. Davis says that immunity for a member of Congress is limited. There is no sovereign immunity, common law sovereign immunity like you all, judges and members of the executive branch have. There is none in the executive. That's the reason I asked. Okay. Yeah. Thank you, Your Honor. So, again, if you take away this one basis that the district judge thought we were dead, how do we know he wouldn't let us amend? We'd asked in our complaint to let us amend, you know, don't dismiss us unless, you know, don't dismiss us. Let us add the third-party companies if that's a problem. We said that. We don't want to sue Google if we don't have to. That obviously would entail difficulties for us. But the district judge viewed an immunity problem and a standing problem. We say the standing problem is curable. And he's wrong about the immunity problem. Of course, the other side says that he's right about both. And if the other side is correct about that, then there's no point even arguing about standing because there's immunity. But if there's no immunity, I believe we ought to be able to correct. We pled that we wanted to correct if it were necessary. And actually, just if I may, in closing, the Simmons case. We are clear, though, counsel, after the district court ruled, you never filed a motion to amend your complaint in the district court. It would have been futile, Your Honor, because of the. I just asked you yes or no. Oh, I'm sorry, I'm having a little difficulty hearing you. Yes, you are correct. In the district court, after the district court ruled against you, did you file a motion to reopen, reconsider, and amend your complaint? Your Honor, no, we did not. And the reason we did not is because it would have been futile. If it were just about standing, we could have. But because of the immunity holding, which we disagree with, we needed to bring it here. And I believe under 28 U.S.C. 1653, we could still. It would be unusual, certainly. We could still, in this court today, or after I write it, file a motion to amend the complaint. I'm not saying we should do that. But I do think we could cure the standing problem. If we're right about immunity, we'd have a shot here. We didn't have a shot in district court. And I do encourage you to invite opposing counsel back to discuss the Simmons and the FTCA and the Westfall Act, because I think those are very important issues, separate and apart from this case. Is there nothing further? My counsel, if my colleagues have no further questions, then thank you, counsel, very much. We'll take the case under advisement. Thank you.
judges: Rogers, Rao, Silberman